TODD KIM                                    The Honorable Robert S. Lasnik
Assistant Attorney General
Environment and Natural Resources Division
LAURA GLICKMAN
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
(202) 514-6390
laura.glickman@usdoj.gov

*Attorneys for U.S. Army Corps of Engineers et al.*

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

| | | |
|---|---|---|
| THE COALITION TO PROTECT PUGET SOUND HABITAT | ) ) ) | Case No. 2:16-cv-00950-RSL |
| *Plaintiff,* | ) ) | **FEDERAL DEFENDANTS'** |
| *v.* | ) ) ) | **RESPONSE TO PLAINTIFF COALITION'S MOTION FOR AN AWARD OF FEES AND** |
| U.S. ARMY CORPS OF ENGINEERS, *et al.,* | ) ) | **EXPENSES** |
| *Defendants*, | ) ) | |
| *and* | ) ) | |
| TAYLOR SHELLFISH COMPANY, INC. | ) ) ) | |
| *Intervenor-Defendant.* | ) ) | |

## I.    INTRODUCTION

Federal Defendants oppose Plaintiff Coalition to Protect Puget Sound Habitat's Motion

for the Award of Fees and Expenses (ECF No. 99) ("Mot.") pursuant to the Equal Access to

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 1

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

Justice Act ("EAJA").  In 2016, Plaintiff challenged the U.S. Army Corps of Engineers' ("Corps") issuance in 2012 of Nationwide Permit 48 ("2012 NWP 48").  ECF No. 1.  Plaintiff subsequently amended its Complaint to challenge the Corps' issuance in 2017 of a new NWP 48 ("2017 NWP 48").  ECF No. 25.  The Court held that the 2017 NWP 48 was unlawful in the State of Washington, and vacated the 2017 NWP 48 in the State of Washington.  *Coal. to Prot. Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 417 F. Supp. 3d 1354 (W.D. Wash. 2019); ECF No. 89.

Plaintiff seeks to recover nearly $800,000 in attorneys' fees and expenses—more than double the award sought by the Center for Food Safety ("CFS"), which also successfully challenged the 2017 NWP 48.[1]  Plaintiff's Motion should be denied because the Corps' position in this litigation was substantially justified, and therefore no recovery is permitted under EAJA. *See* 28 U.S.C. § 2412(d).  Alternatively, any award should be reduced to reflect appropriate hourly rates, to exclude hours that may not reasonably be billed to the United States, and to account for Plaintiff's limited success and practice of block billing.  With these adjustments, a reasonable fee award would be $334,258.11.

## II.     STATUTORY AND LEGAL BACKGROUND

EAJA allows an award of attorneys' fees and costs to a "prevailing party."  28 U.S.C. § 2412(a)(1).  Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in [the] litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).  However, a court shall not award fees under EAJA if the court finds that the position of the United States was "substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  As a partial waiver of the United States' sovereign immunity, EAJA must be strictly construed in favor of the United

---

[1] Federal Defendants and CFS have signed a settlement agreement resolving CFS's claim for fees and costs, and the briefing on CFS's related petition is currently stayed.  Case No. 2:17-cv-01209-RSL, ECF No. 139 at 3-4.

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 2

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1  States, with the burden on the applicant to demonstrate entitlement to such an award.  *Love v.*

2  *Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).

3      If a plaintiff is entitled to fees against the United States, reasonable attorneys' fees are

4  determined by multiplying a reasonable number of hours by a reasonable billing rate, a

5  calculation known as the "lodestar."  *Hensley*, 461 U.S. at 433.  The court then has a special

6  obligation to critically assess the reasonableness of fees charged to American taxpayers.  *Am.*

7  *Petrol. Inst. v. EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996); *Env't. Def. Fund, Inc. v. Reilly*, 1 F.3d

8  1254, 1260 (D.C. Cir. 1993) ("We regard overbilling the government as a serious transgression,

9  damaging to the public fisc and violative of the trust reposed in each member of the bar.").

10      Plaintiffs are obligated to exercise billing judgment and submit a number of hours that is

11  reasonable for the tasks undertaken:  "Hours that are not properly billed to one's *client* also are

12  not properly billed to one's *adversary* pursuant to statutory authority."  *Hensley*, 461 U.S. at 434

13  (internal quotation marks omitted) (emphasis in original).[2]  Moreover, the court cannot "accept[]

14  uncritically plaintiff's representations concerning the time expended on th[e] case," but must find

15  that "the time actually spent was reasonably necessary."  *Sealy, Inc. v. Easy Living, Inc.*, 743

16  F.2d 1378, 1385 (9th Cir. 1984).  Thus, "excessive, redundant, or otherwise unnecessary" hours

17  should not be compensated.  *Hensley*, 461 U.S. at 434.

18      Where not otherwise limited by law, the awarded hourly rate should not exceed the

19  "prevailing market rates" in the relevant legal community.  *Blum v. Stenson*, 465 U.S. 886, 895

---

[2] In his declaration in support of Plaintiff's Motion, Paul Kampmeier claims without basis that "one factor that is critical to evaluating the reasonableness of the fee in cases against the United States is the fact that, if they prevail, a plaintiff's requested fee will be heavily scrutinized *by the losing attorney*. . . [who] is often unhappy about losing. . ."  Decl. of Paul Kampmeier ("Kampmeier Decl.), ECF No. 119 ¶ 24 (emphasis in original).  Mr. Kampmeier further advocates—again, without support—that "courts should be extremely reluctant to accept defense counsel's objections to Plaintiff's counsel's timesheet entries unless and until defense counsel establish with admissible evidence that they or their expert have relevant experience as counsel for non-profit plaintiffs trying to win environmental cases against the United States."  *Id.* ¶ 25.  Such assertions have no basis in law and suggest a distinct bias that, along with other factors, undermines the reliability of Mr. Kampmeier's declaration.

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 3

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

(1984).  Attorneys' hourly rates are statutorily capped under EAJA "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).

### III.     ARGUMENT

#### A.  A Fee Award Is Not Appropriate Because the Corps' Position Was Substantially Justified

Plaintiff is not entitled to fees under EAJA because the Corps' position with regard to the 2017 NWP 48 was "substantially justified."  Plaintiff wrongly assumes that the Corps' 2017 NWP 48 was *ipso facto* not substantially justified because the Court vacated the Permit, but, for the purposes of fee eligibility, the question of whether the Corps succeeded on the merits is distinct from whether the Corps' position was justified.  H.R. REP. NO. 96-1418, at 11 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4989-90; *see Scarborough v. Principi*, 541 U.S. 401, 415 (2004).  Courts have cautioned that substantial justification does not turn on the language of a merits decision, no matter how descriptive.  *Louisiana, ex rel. Guste v. Lee*, 853 F.2d 1219, 1222 (5th Cir. 1988); *Halverson v. Slater*, 206 F.3d 1205, 1212 (D.C. Cir. 2000).  Instead, the Supreme Court in *Pierce v. Underwood* explained that "substantially justified" means justified "in the main" or "to a degree that could satisfy a reasonable person."  487 U.S. 552, 565 (1988).  Substantial justification may be found so long as the government's arguments are not "feeble" or "frivolous" and have "a reasonable basis in law and fact."  *Id.* at 564; *accord Le v. Astrue*, 529 F.3d 1200, 1201 (9th Cir. 2008); *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 558-59 (9th Cir. 1989); *see, e.g., Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002) (denying award "even though the agency's decision [lacked] reasonable, substantial and probative evidence in the record").

In this case, the Corps' position had a reasonable basis in law and fact because courts have routinely upheld other Clean Water Act nationwide permits in similar circumstances.  *See Sierra Club v. Bostick*, 787 F.3d 1043, 1052-53 (10th Cir. 2015) (concluding that the Corps' issuance of a NWP for utility lines complied with NEPA when the Corps issued an EA and

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 4

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1   concluded that the environmental impact would be insignificant); *Sierra Club v. U.S. Army*

2   *Corps of Eng'rs*, 803 F.3d 31, 39-40 (D.C. Cir. 2015) (upholding the NEPA analysis applied to a

3   NWP for an oil pipeline); *Snoqualmie Valley Pres. All. v. U.S. Army Corps of Eng'rs*, 683 F.3d

4   1155, 1164 (9th Cir. 2012) (upholding the Corps' practice of performing NEPA analysis in

5   advance of promulgating general permits, and not conducting additional NEPA analysis when it

6   verifies specific activities under the general permits); *Ohio Env't Coal. v. Bulen*, 429 F.3d 493,

7   501 (4th Cir. 2005) (concluding that the Corps may make its pre-issuance minimal impact

8   determinations by relying in part on post-issuance procedures).  Moreover, the Corps' decision to

9   issue a nationwide permit here was consistent with Congress's creation of the general permit

10  system and conclusion that "requiring individual permits for routine activities imposes

11  unnecessary delay and administrative burdens on the public and the Corps."  H.R. REP. NO. 95-

12  830, at 98, 100 (1977) (Conf. Rep.), as reprinted in 1977 U.S.C.C.A.N. 4424, at 4472-73, 4475);

13  *see also* 33 U.S.C. § 1344(e).  The Corps' position in this litigation therefore was substantially

14  justified, and, as such, Plaintiff is not entitled to compensation under EAJA.

15  **B.  If Fees Are Awarded, the Lodestar Should Be Recalculated**

16          EAJA authorizes the award of "reasonable" attorney fees, 28 U.S.C. § 2412, meaning that

17  both the time expended and the hourly rate must be reasonable.  *United States v. $12,248 U.S.*

18  *Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991).  In devising an award, a court calculates the

19  "lodestar" by multiplying the number of hours it finds the prevailing party reasonably expended

20  on the litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *INS v. Jean*, 496 U.S.

21  154, 161 (1990).  For the reasons described below, neither the hours nor the rates sought by

22  Plaintiff are reasonable.

23          **1.  Plaintiff's Requested Hourly Rates Are Excessive**

24          The moving party bears the burden of proof as to the prevailing market rate.  *Sorenson v.*

25  *Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (citing *Blum*, 465 U.S. at 895 n.11).  "The established

26  standard is the 'rate prevailing in the community for similar work performed by attorneys of

27  comparable skill, experience, and reputation.'"  *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir.

28

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 5

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1    1997) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)).  An

2    attorney's actual billing rate for comparable work is presumptively appropriate to use as the

3    market rate.  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000).  The next best

4    evidence is rates that other attorneys in the area charge paying clients for similar work and

5    evidence of fee awards the attorney has received in similar cases.  *People Who Care v. Rockford*

6    *Bd. of Ed.*, 90 F.3d 1307, 1310-12 (7th Cir. 1996).  Any rate should "not produce windfalls to

7    attorneys," and a court may rely on its own familiarity with the market in setting a reasonable

8    rate.  *Blum*, 465 U.S. at 897; *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

9        Plaintiff in this case seeks the award of rates of $640 per hour for Mr. Anuta, $650 per

10   hour for Mr. Tienson, $300 per hour for Mr. Sargetakis, and $145 for law clerks for all work

11   performed over an approximately nine-year period.  Federal Defendants do not contest Plaintiff's

12   eligibility to obtain rates above the statutory EAJA cap with regard to its challenge to the 2017

13   NWP 48, however Plaintiff has not met its burden in supporting the rates it requests.  The

14   available evidence, including the rate awarded for Mr. Anuta's time in another fees petition, the

15   market rate of Mr. Paul Kampmeier, the Real Rate Report and United States Attorney's Office

16   Matrix adjusted to Seattle rates, and the Western District of Washington's decision in *Sierra*

17   *Club v. BNSF* all support market rates far below those sought by Plaintiff.  As further explained

18   below, the following rates accurately reflect the Seattle market for environmental litigation work,

19   and the Court should utilize these rates in determining any fee award for work relating to

20   Plaintiff's challenge:  $373 per hour for Mr. Anuta and Mr. Tienson, $242 per hour for Mr.

21   Sargetakis, and $125 per hour for law clerks.  In addition, any compensation for Plaintiff's work

22   on its fee petition should be at statutory EAJA rates.

23       **a)  Individual billing rates cited by Plaintiff do not support its requested rates**

24       The declarations provided by Plaintiff in support of its fee petition fail to justify its

25   requested hourly rates.  Mr. Anuta and Mr. Tienson do not claim to have been paid their

26   exorbitant $640 and $650 per hour rates at any time over the past nine years, nor do they cite any

27   recent case in which they received those rates under EAJA.  To the contrary, a plaintiff in a

28

FEDERAL DEFENDANTS' RESPONSE TO                      U.S. Department of Justice
PLAINTIFF COALITION'S MOTION FOR AN                  Environmental Defense Section
AWARD OF FEES AND EXPENSES                           P.O. Box 7611
Case No. 2:16-cv-00950-RSL                           Washington, D.C. 20004
Page 6                                               (202) 514-6390

1    different case sought and was granted $495 per hour for work performed by Mr. Anuta in 2018.

2    *See Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321 at *2 (9th Cir. May 12,

3    2020); *see also id.*, ECF No. 47-2 at 2.  Mr. Anuta's requested rate in *Greenpeace* suggests a

4    market rate that is at least $145 per hour below the rate requested in this litigation.  *See People*

5    *Who Care*, 90 F.3d at 1312 (citation omitted).

6            The declaration of Mr. Kampmeier also supports a 2021 market rate for Mr. Anuta and

7    Mr. Tienson below $500 per hour.  Mr. Kampmeier owns a boutique environmental law firm,

8    where he focuses his practice on enforcing and litigating under federal environmental law, in

9    particular the Clean Water Act, Endangered Species Act and National Environmental Policy Act.

10   Kampmeier Decl. ¶5.  His declaration lists over a page of precedential decisions that he has

11   obtained or helped obtain under these statutes.  *Id.* ¶7.  Yet, despite his environmental litigation

12   expertise and apparent record of success, the current market rate for his time is $490 per hour.

13   *Id.* ¶33.  Given Mr. Kampmeier's experience, area of specialization, and firm size, his rate is

14   representative of Seattle market rates for Mr. Anuta and Mr. Tienson.  *See* Decl. of Dr. Laura

15   Malowane ("Malowane Decl.") ¶36.  Certainly, nothing in Mr. Kampmeier's declaration

16   explains why Mr. Anuta and Mr. Tienson should receive hourly rates that are more than 30

17   percent higher than Mr. Kampmeier's.

18           The declaration of Thomas Newlon likewise fails to support the requested rates for Mr.

19   Anuta and Mr. Tienson.  Mr. Newlon was a partner at Stoel Rives LLP in Seattle from 2002 to

20   2020, and is currently Special Counsel at the firm.  Decl. of Thomas Newlon ("Newlon Decl.")

21   (ECF No. 120) ¶2.  According to his declaration, Mr. Newlon's average rate from 2013 to 2020

22   was $613 per hour, which is *below* Mr. Anuta and Mr. Tienson's requested rates for the same

23   time period.  *See id.* ¶8.  This difference is significant, because, as a large law firm, the rates at

24   Stoel Rives LLP are typically higher than rates at smaller or boutique firms like Plaintiff's

25   counsels'.  *See* Malowane Decl. ¶¶12-13, 33.  Because they do not have the same overhead

26   expenses, smaller law firms typically offer lower market rates than larger law firms.  *Id.*; *see also*

27   *Heller v. Dist. Of Columbia*, 832 F. Supp. 2d 32, 46-48 (D.D.C. 2011) (declining to award rates

28

FEDERAL DEFENDANTS' RESPONSE TO                     U.S. Department of Justice
PLAINTIFF COALITION'S MOTION FOR AN                 Environmental Defense Section
AWARD OF FEES AND EXPENSES                          P.O. Box 7611
Case No. 2:16-cv-00950-RSL                          Washington, D.C. 20004
Page 7                                              (202) 514-6390

requested based on evidence of market rates at largest law firms).  Specifically, "[t]he market generally accepts higher rates from attorneys at firms with more than 100 lawyers than from those at smaller firms—presumably because of their greater resources and investments, such as attorneys, librarians, researchers, support staff, information technology, and litigation services." *Heller*, 832 F. Supp. 2d at 46-47 (quotation omitted).  Moreover, Mr. Newlon's declaration is not a representative sample in any statistical sense, and selection bias likely occurred because Mr. Newlon was selected by Plaintiff, who is seeking fees.  Malowane Decl. ¶34.  Mr. Newlon's declaration therefore does not justify Plaintiff's requested rates.

For these reasons, the declarations submitted by Plaintiff, as well the rate actually awarded for Mr. Anuta's time in a different case, support rates for Mr. Anuta and Mr. Tienson below $500.

### b)  Billing survey data and federal billing litigation rates confirm that Plaintiff's requested rates are unreasonably high

Plaintiff attempts to bolster the market rates it seeks by referencing irrelevant survey data and cherry-picked miscalculations from other, applicable surveys.  Proper interpretation of these data sources confirms that Plaintiff's requested rates far exceed those currently received by environmental litigation partners and associates in the Seattle market.

Plaintiff's reliance on the National Law Journal ("NLJ") Billing Survey—and in particular, the Survey's rates for large law firms such as Stoel Rives LLP, Perkins Coie LLP, Davis Wright Tremaine LLP, and Lane Powell PC (Mot. at 12-13)—is misplaced.  First, the NLJ Billing Survey is an annual survey of billing rates of the largest law firms across the United States, which, as discussed above, are not representative of smaller firms in Seattle.  Malowane Decl. ¶¶9, 11.  The NLJ Billing Survey rates for large law firms with Seattle offices (such as Perkins Coie) to a large extent reflect market rates at those firms' offices in higher-rate markets such as New York and Washington, D.C.  *Id.* ¶14.  Second, within these large firms, Plaintiff ignored the "average" billing rates from the Survey and selected the single highest billing partner and associate attorney rates.  *Id.* ¶¶15-16.  Third, Plaintiff ignores the difference between attorneys' rack, *i.e.,* billable rates, and the rates they actually collect.  *Id.* ¶¶19-20.  Studies

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 8

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1    confirm that rack rates, such as those in the NLJ Billing Survey, are not representative of realized

2    rates, as law firms usually discount their rates or fees using a discount rate or a realization rate.

3    *Id.*

4            Plaintiff also relies on the 2018 Real Rate Report in support of its requested rates.  The

5    Real Rate Report is an annual survey of actual rates charged by law firms as recorded on

6    invoices submitted and approved for payment.  *Id.* ¶23.  It is intended to provide corporate

7    counsel an estimate of actual rates charged and realized by outside counsel, and thus strives to

8    minimize the effects of rate and time discounts.  *Id.*  Federal Defendants agree that the Real Rate

9    Report is an appropriate and reliable resource for determining market rates in the EAJA context.

10   *See, e.g., Kohler v. Eddie Bauer, LLC*, 792 F. Appx. 446, 448 (9th Cir. 2019) ("[T]he district

11   court did not abuse its discretion in determining the lodestar amount" because "[t]he court

12   reasonably considered the 2015 Real Rate Report"); *Arias v. Ford Motor Co.*, No. EDCV 18-

13   1928 PSG, 2020 WL 1940843 at *5 (C.D. Cal. Jan. 27, 2020) ("adjust[ing] Plaintiffs' counsel's

14   hourly rates to make them consistent with the Real Rate Report" because it "reflects the usual

15   rates in the community for similar work"); *Holmes v. Harris*, No. CV 18-3739 PSG, 2019 WL

16   6354385 at *2 (C.D. Cal. 2019) ("Courts have found that the Real Rate Report is a much better

17   reflection of true market rates than self-reported rates in all practice areas") (internal quotation

18   marks omitted).

19           Although use of the Real Rate Report is appropriate in this case, Plaintiff has cherry-

20   picked and inflated data from the Report to overstate applicable rates between 2013 and 2021.

21   *See* Suppl. Mem. In Support of an Award of Fees and Expenses (ECF No. 118) ("Mem.") at 4-5.

22   As detailed in the declaration of economist Dr. Laura Malowane, Plaintiff selected higher rates

23   from the category of "all non-litigation and litigation rates by partners and associates" in Seattle

24   despite the existence of a litigation-specific category.  Malowane Decl. ¶25.  Plaintiff then

25   inflated this already-overstated rate by using the 75th percentile data point in that category,

26   which reflects the rate that is higher than that of 75 percent of all Seattle partners in all areas of

27   law.  *Id.*  Plaintiff further compounded these miscues by inexplicably assuming a billing growth

28

1   rate of approximately 10 percent for Mr. Anuta and Mr. Tienson between 2019 to 2021.  *Id.* ¶26.

2   Using these cherry-picked rates and deeply flawed calculations, Plaintiff estimated a rate of

3   $914.99 per hour for Mr. Anuta and Mr. Tienson in 2021 (Mot. at 5), which exceeds the most

4   recent rack rate for Mr. Newlon—at the time a partner at one of Seattle's largest law firms—by

5   $200.  *See* Newlon Decl. ¶8.  The 2020 Real Rate Report further confirms the absurdity of

6   Plaintiff's estimated 2019 rate, as the growth rate for fees charged by experienced Seattle

7   partners was negative in 2019 and largely flat in 2020.  Malowane Decl. ¶26.  Plaintiff repeated

8   this flawed methodology when it used a 17 percent annual growth rate to estimate a rate of $300

9   per hour for Mr. Sargetakis in 2019; the 2020 Real Rate Report reveals the correct 2019 rate for

10   Mr. Sargetakis is between $263 and $277 per hour.  *Id.* ¶27.

11          A statistically-sound interpretation of Real Rate Report data yields rates far below those

12   claimed by Plaintiff.  The Real Rate Report does not include environmental litigation rates for

13   Seattle, however it is possible to estimate those rates using nationwide data.  *Id.* ¶37.  By

14   comparing overall attorney rates for all legal areas in the United States to overall rates for

15   attorneys in Seattle, Dr. Malowane concluded that overall Seattle rates for partners and

16   associates were, on average, 22.83% lower than national rates in 2016 and 2017, and 18.97%

17   lower in 2018 to 2020.  *Id.* ¶40.  Using these percentages to adjust the Real Rate Report's

18   national environmental litigation rates to Seattle, Dr. Malowane estimates that Seattle-specific

19   environmental litigation billing rates ranged from $358 per hour in 2013 to $441 per hour in

20   2021 for partners, and $245 per hour in 2013 to $314 per hour in 2021 for associates.  *Id.*, Matrix

21   1.  If this Court were to award fees utilizing a constant rate per lawyer in its fees analysis, as

22   suggested by Plaintiff (Memo. at 5, n.1), it should use the mean rates across the nine years over

23   which Plaintiff performed work: $373 per hour for partners and $242 per hour for associates.

24   Malowane Decl., Matrix 1.  If, as Plaintiff advocates, the Court were to award a "bump" in

25   Plaintiff's counsels' rates to reflect their seniority, then the Court should use the 2020 rates Dr.

26   Malowane estimated from the 2020 Real Rate Report, which were $423 per hour for partners and

27   $301 per hour for associates.  *Id.*  The reasonableness of the rates from the Real Rate Report is

28

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 10

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1    confirmed by the fact that Mr. Kampmeier's current market (*i.e.,* rack) rate of $490 per hour is

2    generally consistent with the Real Rate Report's partner rate of $441 for 2021. *Id.* ¶44.

3    Seattle-adjusted federal litigation billing rates derived from the U.S. Attorney's Office

4    ("USAO") Matrix for Washington, D.C., further confirm the reasonableness of the rates Dr.

5    Malowane derived from the Real Rate Report. Plaintiff also has endorsed the use of the USAO

6    Matrix (Mot. at 13); however, as described by Dr. Malowane, Plaintiff once again erred in its

7    adjustments of those rates. Malowane Decl. ¶30. Specifically, Plaintiff mistakenly looked to the

8    Office of Personnel Management's GS locality pay adjustments, which are generic cost-of-living

9    adjustments for federal workers as a whole, instead of more specific data on attorney salaries

10   published by the Bureau of Labor Statistics ("BLS"). *Id.* ¶¶ 30, 43. BLS data shows that, on

11   average, Seattle attorneys earn 25.43 percent less than attorneys in the Washington, D.C. area.

12   *Id.* ¶43. When properly adjusted to Seattle, the USAO Matrix yields 2017 rates[3] of $433 per

13   hour for attorneys with 31 years or more of experience (corresponding to Mr. Tienson's level of

14   experience at the time), $405 per hour for attorneys with 21 to 30 years of experience

15   (corresponding to Mr. Anuta's level of experience), and $217 per hour for attorneys with less

16   than two years of experience (corresponding to Mr. Sargetakis's level of experience). *Id.* Matrix

17   2. These rates are consistent with the rates derived from the Real Rate Report.

18   Finally, Plaintiff's requested rates significantly exceed those awarded in *Sierra Club v.*

19   *BNSF Railway Co.*, 276 F. Supp. 3d 1067 (W.D. Wash. 2017). There, the court awarded $500

20   per hour to an attorney with 36 years of experience, $387.50 per hour to an attorney with 22

21   years of experience, and $220 per hour to an attorney with five years of experience.[4] *See id.* at

22   1076. These rates were not based upon the Real Rate Report, which provides a more accurate

23

24

25

26   [3] 2017 is the midpoint or median year of the nine-year span for which Plaintiff seeks to recoup
     fees.

27   [4] There were no attorneys with fewer than six years of experience for whom the *BNSF* court set
     rates.

28

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 11

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

picture of environmental litigation rates in Seattle.  Nevertheless, *BNSF* illustrates how out-of-step Plaintiff's requested rates are from the Seattle environmental litigation market.

For these reasons, in calculating any fee award for work relating to Plaintiff's challenge, the Court should use the mean rates from the Real Rate Report of $373 per hour for partners and $242 per hour for associates.  If the Court awards a "bump" in Plaintiff's counsels' rates to reflect their seniority, then it should use the 2020 rates Dr. Malowane estimated using the 2020 Real Rate Report, which were $423 per hour for partners and $301 per hour for associates.

### c)  Plaintiff has not justified its requested rate for law clerks

Plaintiff has failed to provide any support whatsoever for the $145 per hour rate sought for various law clerks, and therefore has not met its burden of proof as to the market rate sought. *See Sorenson*, 239 F.3d at 1145 (moving party bears burden of proof as to the prevailing market rate).  Specifically, Plaintiff has not provided the clerks' names, much less any information about their qualifications, for example their legal education or any specific legal expertise that they may possess in order to support the requested rate.  A more reasonable rate for law clerks is $125 per hour, which the Ninth Circuit awarded in *Greenpeace*.  *See* 2020 WL 2465321 at *2.

### d)  Time spent in connection with recovering fees must be compensated at statutory EAJA rates

Plaintiff is not entitled to recover an enhanced rate for any time spent in connection with its fee petition, as such work does not require specialized or distinctive knowledge within the meaning of EAJA.  *Lucas v. White*, 63 F. Supp. 2d 1046, 1062-63 (N.D. Cal. 1999) (citing *Douglas v. Baker*, 809 F. Supp. 131 (D.D.C. 1992)); *see also Ctr. For Biological Diversity v. Bureau of Land Mgmt.*, No. C 06-4884 SI, 2012 WL 273604 at *4 (N.D. Cal. Jan. 30, 2012) (applying statutory cap to time spent on fee petition).  Instead, time spent on the fee petition is to be compensated at the statutory EAJA rates, which were $213.74 for the first half of 2021, $207.78 for 2020 and $205.25 for 2019.  *See* U.S. Courts for the Ninth Cir., Statutory Maximum Rates Under EAJA, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/.  These adjustments reduce Plaintiff's $67,077.00 request for work relating to the fee petition to $28,410.89.

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 12

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2. Plaintiff's Hours Should Be Adjusted Downward to Exclude Hours That May Not Be Reasonably Billed to the United States, and to Account for Plaintiff's Limited Success and Block Billing**

As the fee applicant, Plaintiff bears the burden of documenting the hours it appropriately expended in the litigation, and it must submit evidence in support of those hours. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 431. Fee applicants, and the Court, should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

As we demonstrate below, Plaintiff's hours must be reduced because it seeks to recover time that is not compensable under EAJA, specifically hours spent: (1) responding to third parties; (2) performing clerical tasks; (3) performing work on an unrelated case for a different client; (4) seeking a fee waiver for a FOIA request from the Corps; and (5) advising its co-Plaintiff on page limits. In addition, the Court should reduce any fee award to account for Plaintiff's lack of success on its challenge to the 2012 NWP and its excessive use of block billing.

**a) Hours spent responding to third parties are not compensable**

Plaintiff seeks compensation for 153.00 hours spent responding to several motions filed by Intervenors in this Court and the Ninth Circuit. But such time is not compensable under EAJA. A plaintiff cannot be awarded fees it incurred in opposing motions by third parties unless the defendant joined the intervenor's motion or that portion of the litigation was "made necessary by government opposition to legitimate claims of the party seeking the award." *Love v. Reilly*, 924 F.2d at 1495-96 (citing *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 636 (5th Cir. 1986)); *see also Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1097 (9th Cir. 2002) (affirming denial of fees incurred opposing motions to intervene); *Stormans Inc. v. Selecky*, 906 F. Supp. 2d 1093, 1102-03 (W.D. Wash. 2012) ("Merely intervening because government action has made a person interested in the outcome and able to intervene is not enough under *Love* to shift the costs

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 13

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1   associated with that person to the [government].").  Indeed, where a prevailing plaintiff litigated

2   an issue and was opposed only by private defendants, a fee award against the government would

3   be "manifestly unfair and contrary to historic fee-shifting principles."  *Love*, 924 F.2d at 1496

4   (quoting *Avoyelles Sportsmen's League*, 786 F.2d at 636); *see also Hells Canyon Pres. Council*

5   *v. U.S. Forest Serv.*, No. CV-00-755-HU, 2004 WL 1853134, at *7 (D. Or. Aug. 18, 2004)

6   (excluding time spent responding to motion to intervene).

7           Here, Plaintiff seeks compensation for 50.60 hours spent opposing Nisbet Oyster Co.,

8   Inc.'s ("Nisbet") Motion to Intervene (ECF No. 78).  *See* Ex. 1, Federal Defendants' Annotations

9   of Plaintiff's Timesheets (entries marked as "Third Party" between 5/7 and 6/4/2020).  The

10  United States did not join that motion.  Nisbet sought a different remedy from this Court than did

11  the United States, and, thus, the fees attributable to fighting that motion were not incurred in

12  opposing government resistance.  *See* Nisbet Mot. to Intervene at 3 (requesting the Court to

13  "stay[] the invalidation of Nationwide Permit 48 as to any shellfish grower which can meet the

14  detailed criteria of Nisbet's Proposed Order.").  Plaintiff cannot be compensated for this time.

15          Plaintiff also seeks compensation for 97.30 hours relating to the Ninth Circuit appeal and

16  Motion to Stay filed by Taylor Shellfish Company Inc. ("Taylor Shellfish") on June 18, 2020.

17  *See* Ex. 1 ("Third Party" entries between 5/7 and 8/24/2020); ECF No. 90; *Coal. to Protect*

18  *Puget Sound v. Taylor Shellfish Co.*, Case No. 20-35546 (9th Cir.), ECF No. 11726932.[5]

19  Because Federal Defendants did not join or otherwise participate in the Motion to Stay, fees

20  attributable to Plaintiff's opposition to that motion are not recoverable.  *See Love*, 924 F.2d at

21  1495-96 (finding that award of fees for the opposition to a stay was error).  Moreover, any time

22  relating to appellate work outside of the 10-day period during which Federal Defendants' appeal

23  was pending in the Ninth Circuit is not compensable, as Federal Defendants did not join Taylor

24  Shellfish's appeal, nor were Plaintiff's fees incurred in opposing government resistance.  *See*

25

26  _____

27  [5] Plaintiff also spent 5.10 hours on communications and work relating to Taylor Shellfish's
    intervention, which also are not compensable.  *See* Ex. 1 ("Third Party" entries between 8/10 and
28  8/30/2016, and on 4/26/2017 and 10/23/2019).

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 14

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1    ECF Nos. 96, 98 (Federal Defendants' Notice of Appeal filed on August 10, 2020, and

2    voluntarily dismissed ten days later). Even within those ten days, the majority of Mr. Anuta and

3    Mr. Tienson's time is block billed for work relating to both Federal Defendants' and Taylor

4    Shellfish's separate appeals. As such, it is impossible to determine with any certainty the

5    portions of those time entries that pertain to Federal Defendants' appeal. For those time entries,

6    none of Plaintiff's time should be compensable. These adjustments reduce Plaintiff's total fee

7    request by $76,076.50, assuming Plaintiff's requested rates.

8           **b) Hours spent on clerical tasks are not compensable**

9           Plaintiff seeks to recover fees for 136.25 hours spent on clerical tasks, which are not

10   compensable under EAJA. "[P]urely clerical or secretarial tasks should not be billed at a

11   paralegal [or lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S.

12   274, 288 n.10 (1989). Instead, such clerical tasks should be "subsumed in firm overhead."

13   *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Here, unnamed law clerk(s) spent

14   116.25 hours creating indices of documents they expected Federal Defendants to provide in the

15   administrative record for this case and of documents provided by the Washington Department of

16   Natural Resources in response to a records request. *See* Ex. 1 (entries marked as "Clerical"

17   between 6/28 and 10/19/2016). Such work is clerical in nature and thus is not compensable. *See*

18   *Tarango v. City of Bakersfield*, No. 1:16-cv-0099-JLT, 2017 WL 5564917 at *18 (E.D. Cal. Nov.

19   20, 2017) (drafting index not compensable); *see also Frevach Land Co. v. Multnomah Cnty.*, No.

20   CV-99-1295-HU, 2001 WL 34039133 at *12 (D. Or. Dec. 18, 2001) (same). Plaintiff also seeks

21   to recover fees for 18.8 hours Mr. Sargetakis spent creating tables of contents and authorities and

22   collecting exhibits, which similarly are not compensable. *See* Ex. 1 ("Clerical" entries dated

23   4/5/2018, 11/2/2018, and 9/10/2019); *League of Wilderness Defs./Blue Mountains Biodiversity*

24   *Project v. Turner*, 305 F. Supp. 3d 1156, 1171 (D. Or. 2018) (creating and reviewing tables of

25   contents and authorities not compensable); *Nadarajah*, 569 F.3d at 923 (assembling documents

26

27

28

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 15

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1   not compensable).[6]  Finally, Plaintiff seeks to recover fees for one hour of time billed by Mr.

2   Tienson and Mr. Anuta for scheduling, which similarly is not compensable.  *See* Ex. 1

3   ("Clerical" entries dated 12/19/2017 and between 4/22 and 4/24/2020); *Muller v. Country Mut.*

4   *Co.*, No. 3:14-cv-01345-MO, 2017 WL 6209701 at *6 (D. Or. Dec. 8, 2017) (scheduling not

5   compensable).  Plaintiff should not be compensated for any time relating to these tasks, which

6   would reduce its total fee request by $23,274.25, assuming Plaintiff's requested rates.

7   **c)  Hours spent on a different case for a different client are not compensable**

8   Plaintiff seeks compensation for Mr. Anuta and Mr. Tienson's 2.1 hours of work on

9   behalf of a different client in a different case.  *See* Ex. 1 (entries marked as "Unrelated" dated

10   5/13 and 6/11/2013).  There, Mr. Anuta and Mr. Tienson represented Case Inlet Shoreline

11   Association as an Intervenor-Defendant supporting the Corps' decision not to apply a prior NWP

12   48 to specific aquaculture project areas.  *See Seattle Shellfish LLC v. U.S. Army Corps of Eng'rs*,

13   No. 2:12-cv-02150-RSL (W.D. Wash.), ECF Nos. 1, 22, 48.  Because Plaintiff was not a party in

14   *Seattle Shellfish* and because Mr. Anuta and Mr. Tienson's client intervened in support of the

15   Corps, time spent on that case is not related to Plaintiff's challenge in the instant case and

16   therefore is not compensable.  Assuming Plaintiff's requested rates, removal of these hours

17   would reduce Plaintiff's fee award by $1,365.

18   **d)  Hours spent negotiating a fee waiver from the Corps are not compensable**

19   Plaintiff seeks compensation for 3.25 hours spent negotiating a fee waiver for its FOIA

20   requests from the Corps.  *See* Ex. 1 (entries marked as "Unallowable" dated 12/9/2013,

21   12/16/2013, 12/17/2013, 2/2/2020, and 4/18/2020).  Plaintiff should have either sought the fee

22   waiver, or, alternatively, paid the fee and sought to recoup that cost from the United States as

23   part of a fee petition.  But Plaintiff cannot have it both ways.  It is unreasonable for the taxpayer

24   to absorb both the cost of the fee waiver for the FOIA requests and the time spent obtaining the

25

26

27   ---

    [6] Certain of these hours were block-billed alongside compensable time.  In instances where the

28   majority of the time in a particular entry appears to be clerical, the Court should not award fees
    for any of the time billed.

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 16

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1  fee waiver.  *See Hensley*, 461 U.S. at 433 (holding that hours that are "excessive, redundant, or
2  otherwise unnecessary" should be excluded).  The Court therefore should deduct these hours
3  from any fee award, which would reduce Plaintiff's fee request by $2,089.50, assuming
4  Plaintiff's requested rates.

### e)  Hours spent advising Center for Food Safety on their briefing page limit are not compensable

7      Plaintiff seeks compensation for 3.6 hours spent on an "Email exchange with CFS on
8  their Briefing page limit issue."  *See* Ex. 1 (entry marked as "Unallowable" dated 11/9/2018).
9  Plaintiff's time entry does not explain why advising its co-Plaintiff, Center for Food Safety
10 ("CFS"), on this topic, was necessary to advance Plaintiff's case, nor why billing 3.6 hours for
11 this exchange was reasonable.  *See, e.g., Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385
12 (9th Cir. 1984) (courts must ensure that "the time actually spent was reasonably necessary").
13 These hours therefore are not compensable, which would reduce Plaintiff's fee award by $2,304,
14 assuming Plaintiff's requested rates.

### f)  Plaintiff's block-billed hours should be reduced by 20 percent

16     The Court should reduce any award of fees to account for Plaintiff's excessive use of
17 block billing.  Block billing is "the time-keeping method by which each lawyer and legal
18 assistant enters the total daily time spent working on a case, rather than itemizing the time
19 expended on specific tasks."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)
20 (internal quotations omitted).  Block billing makes it more difficult for courts to determine how
21 much time plaintiffs spent on particular activities.  *Id.* at 948 (citing *Role Models Am., Inc. v.
22 Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing hours compensated because block
23 billing "lump[ed] together multiple tasks, making it impossible to evaluate their
24 reasonableness")); *see also Hensley*, 461 U.S. at 437 (applicant should "maintain billing time
25 records in a manner that will enable a reviewing court to identify distinct claims").  Evidence
26 suggests that block billing "may increase time by 10% to 30%."  *Welch*, 480 F.3d at 948 (quoting
27 The State Bar of Cal. Comm. On Mandatory Fee Arbitration, Arbitration Advisory 03-01
28 (2003)).  As marked in Exhibit 1, Plaintiff's time entries are replete with block billing, including

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 17

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1   certain time entries that span multiple days.  *See, e.g.,* First Anuta Decl., Ex. B at 50 (law clerk

2   time entry dated 2/3-13/2017 with description "Review 2012 & 2017 NWP 48 Decision

3   Documents; Draft and provide Memo comparing both to KGA; Draft and provide Memo on

4   cumulative impact analysis comparisons specifically.").  Consistent with this Court's approach in

5   *Sierra Club v. BNSF Railway Co.*, each of Plaintiff's block-billed time entries that are otherwise

6   compensable should be reduced by twenty percent.  276 F. Supp. 3d at 1073-74.  Doing so would

7   reduce Plaintiff's number of otherwise compensable hours by 90.08 hours, which equates to a

8   reduction of $28,367.31, assuming Plaintiff's requested rates.

9         **g)   Any fee award should be adjusted downward because Plaintiff did not prevail on**

10              **its claims relating to the 2012 NWP 48, or, alternatively, because the total**
           **number of hours expended is unreasonable**

11         If Plaintiff is awarded fees, the total award should be reduced to account for the fact that

12   Plaintiff did not prevail on its challenge to the 2012 NWP 48.  *Coal. to Prot. Puget Sound*

13   *Habitat v. U.S. Army Corps of Eng'rs*, 417 F. Supp. 3d 1354 (W.D. Wash. 2019) (silent on

14   Plaintiff's claims relating to the 2012 NWP 48).  Courts are to consider a plaintiff's overall

15   success on the merits in determining the reasonableness of a fee award.  *Farrar v. Hobby*, 506

16   U.S. 103, 114 (1992) (citation omitted).  Thus, when a plaintiff presents "distinctly different

17   claims for relief that are based on different facts and legal theories," the law "requires that these

18   unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee

19   may be awarded for services on the unsuccessful claim."  *Hensley*, 461 U.S. at 434-35.  Related

20   claims may involve a common core of facts or be based on related legal theories.  *Webb v. Sloan*,

21   330 F.3d 1158, 1168 (9th Cir. 2003).  However, the Ninth Circuit has made clear that, ultimately,

22   "the focus is on whether the claims arose out of the same course of conduct."  *Id.* at 1169

23   (quoting *Schwarz v. Sec. of Health & Human Serv.*, 73 F.3d 895, 903 (9th Cir. 1995)); *see also*

24   *Cmty. Ass'n for Restoration of the Env't v. Henry Bomsa Dairy*, 305 F.3d 943, 956 (9th Cir.

25   2002) ("[C]laims are unrelated when the relief sought on the unsuccessful claim is intended to

26   remedy a course of conduct entirely distinct and separate from the course of conduct that gave

27   rise to the injury on which the relief granted is premised.") (internal quotation omitted).  Here,

28

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 18

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1    the 2012 NWP 48 was a distinct agency action from the 2017 NWP 48, with a wholly separate

2    administrative record that was not part of the 2017 record.  *See* Federal Defs.' Mot. Summ. J. &

3    Opp'n to Plaintiff's Mot. Summ. J. (ECF No. 44) at 18, 21.  It therefore did not arise from the

4    same course of conduct as the 2017 NWP 48.  Accordingly, Plaintiff's total number of

5    compensable hours should be adjusted downward by 10 percent to account for the fact that

6    approximately one-third of Plaintiff's total requested award is for hours that predate the issuance

7    of the 2017 NWP 48 on January 6, 2017.

8            In the alternative, the Court should reduce the number of compensable hours, after

9    making the other adjustments we describe, by 10 percent, because the total number of hours for

10   which Plaintiff seeks compensation is unreasonable.  *See Moreno v. City of Sacramento*, 534

11   F.3d 1106, 1112 (9th Cir. 2008) (district courts may impose up to a 10 percent "haircut" solely

12   based on its exercise of discretion).[7]  Specifically, Plaintiff seeks compensation for

13   approximately 1,256 attorney hours, 463 law clerk hours, and 13 paralegal hours, for a total of

14   approximately 1,732 hours reaching as far back as 2013.  *See* Ex. B to First Decl. of Karl G.

15   Anuta (ECF No. 100) at 132; Second Decl. of Karl G. Anuta (ECF No. 118) at 11.  Notably,

16   Plaintiff's total is nearly double the total number hours sought by CFS in its fee petition, and

17   includes approximately 35 percent more attorney hours.  *See Ctr. For Food Safety v. U.S. Army

18   Corps of Eng'rs*, Case No. 2:17-cv-120-RSL, Ex. A to Decl. of Amy van Saun (ECF No. 123)

19   (seeking compensation for 926.25 attorney hours, 33 legal fellow and law clerk hours, and 33.90

20   legal assistant hours, for a total of 993.15 hours).  The disparity in the number of hours billed is

21   particularly noteworthy given that Plaintiff's attorneys on the whole have vastly more experience

22   than CFS's attorneys, which should have made their work on this case more efficient.  *See id.*,

23   ECF No. 121 at 5 (CFS's attorneys had been practicing for nearly 16 and seven years as of

24   2020); Decl. of Thane Tienson (ECF No. 101) ¶2 (practicing for 43 years as of 2020); First

25   Anuta Decl. ¶2 (practicing for 33 years as of 2020); Decl. of Mike Sargetakis ¶4 (ECF No. 99)

26

27   ─────────────────

28   [7] Although Plaintiff's time sheets include some voluntary hours reductions, the vast majority of
     those reductions are for time that is not compensable under EAJA.

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 19                                          U.S. Department of Justice
                                                 Environmental Defense Section
                                                 P.O. Box 7611
                                                 Washington, D.C. 20004
                                                 (202) 514-6390

1 (practicing for 3 years as of 2020).  Regardless, the disparity in hours alone demonstrates that

2 Plaintiff's hours were not reasonably expended.  *See Hensley*, 461 U.S. at 433.

3       If the Court uses the mean rates from the Real Rate Report and makes the other hours

4 reductions Federal Defendants propose, a 10 percent reduction would reduce Plaintiff's total fees

5 from $371,397.90 to $334,258.11.  Using the 2020 rates from the Real Rate Report, a 10 percent

6 reduction would reduce Plaintiff's total fees from $417,562 to $375,691.50.

7 <div align="center">**IV.**    **CONCLUSION**</div>

8       Plaintiff's Motion should be denied because the Corps' position in this litigation was

9 substantially justified.  *See* 28 U.S.C. § 2412(d).  Alternatively, any award should be reduced to

10 reflect appropriate hourly rates, to exclude hours that may not reasonably be billed to the United

11 States, and to account for Plaintiff's limited success and practice of block billing.  With these

12 adjustments, any fee award would total $334,258.11.  If the Court were to award a seniority

13 bump for Plaintiff's counsel, such a fee award would total $375,691.50.

14

15

16       Dated: August 16, 2021

17                           Respectfully submitted,

18

19                           TODD KIM
                          Assistant Attorney General

20                           Environment and Natural Resources Division

21                           *s/ Laura Glickman*

22                           LAURA GLICKMAN
                          Environmental Defense Section

23                           Environment and Natural Resources Division
                          United States Department of Justice

24                           P.O. Box 7611

25                           Washington, D.C.  20044
                          (202) 514-6390

26                           laura.glickman@usdoj.gov

27

28

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 20

                          U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2021, I filed the foregoing Response to Plaintiff Coalition's Motion for An Award of Fees and Expenses with the Clerk of the Court using the CM/ECF system which will cause a copy to be served upon counsel of record.

<div style="margin-left: 40%;">

*s/ Laura Glickman*
LAURA GLICKMAN
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044
(202) 514-6390
laura.glickman@usdoj.gov

</div>

FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFF COALITION'S MOTION FOR AN
AWARD OF FEES AND EXPENSES
Case No. 2:16-cv-00950-RSL
Page 21

U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-6390