UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE COALITION TO PROTECT PUGET SOUND HABITAT,<br><br>Plaintiff,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br><br>Defendant.<br><br>and<br><br>TAYLOR SHELLFISH COMPANY, INC.,<br><br>Intervenor - Defendant. | Case No. C16-0950RSL<br><br>ORDER GRANTING ATTORNEY FEES AND EXPENSES |

This matter comes before the Court on plaintiff's motion for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (Dkt. # 99). Having reviewed plaintiff's motion as well as plaintiff's supplemental memorandum (Dkt. # 117), defendant's response (Dkt. # 121), plaintiff's reply (Dkt. # 123), and supporting declarations filed by the parties (Dkt. # 100-103, 118-120, 122), the Court finds oral argument unnecessary and holds that plaintiff is entitled to fees and expenses under the EAJA as enumerated below.

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 1

## BACKGROUND

When a party prevails in a civil action against the United States or any of its agencies and the prevailing party properly requests an award of attorney fees and expenses, the EAJA requires the Court to award fees and expenses unless it finds "the position of the United States was substantially justified" or "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1-3).

To properly request an award of fees and expenses, a party must submit an application to the Court within thirty days of final judgment in the case. 28 U.S.C. § 2412(d)(1)(B). The party must show it has prevailed in the litigation, itemize fees and expenses sought, and specifically allege that the position of the United States was not substantially justified. *Id*. In addition, the party requesting fees and expenses must meet certain criteria regarding its net worth and, if relevant, its corporate form. 28 U.S.C. § 2412(d)(2)(B).

On June 22, 2016, plaintiff filed a civil action against the U.S. Army Corps of Engineers alleging the Corps had violated the National Environmental Policy Act (NEPA), the Clean Water Act (CWA), and the Administrative Procedure Act (APA) when it authorized certain commercial shellfish aquaculture operations in Washington State through a reissuance of Nationwide Permit 48 (NWP 48). Dkt. # 1. The action challenged the version of NWP 48 that was issued on February 21, 2012.

On January 6, 2017, the Corps reissued NWP 48. Dkt. # 25. On June 5, 2017, plaintiff filed a supplemental complaint asserting that the previously alleged violations of NEPA, the CWA, and the APA continued with the Corps' 2017 permit reissue. *Id.*

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 2

On October 10, 2019, this Court issued an order finding NWP 48 unlawful in the State of Washington and holding that the Corps had violated NEPA, the CWA, and the APA in its issuance of NWP 48. Dkt. # 61. In reaching its decision, the Court considered both the 2012 and 2017 issuances of NWP 48, specifically noting that the Corps had failed to properly account for "cumulative impacts" when it reissued NWP 48 in 2017 and explaining how those cumulative impacts have roots in the version of NWP 48 that was issued in 2012. Dkt. # 61 at 12-14. The Court then vacated NWP 48 in the State of Washington, commanded the Corps to comply with the CWA and NEPA when processing commercial shellfish aquaculture permits in the state, and instructed the Corps to begin processing shellfish permits on an individual basis "as expeditiously as possible." Dkt. # 89. The vacation of NWP 48, the command to comply with the CWA and NEPA, and the instruction to begin processing permits on an individual basis were all among the specific relief sought by plaintiff. Dkt. # 25.

The Corps filed a notice of appeal to the Ninth Circuit on August 10, 2020. Dkt. # 96. Ten days later, on August 20, 2020, the Corps voluntarily dismissed its Ninth Circuit appeal. Dkt. # 98. Intervenor Taylor Shellfish Company pursued its appeal to the Ninth Circuit, however. Dkt. # 90. On February 11, 2021, the Ninth Circuit issued a memorandum in that appeal affirming the judgment of this Court. Dkt. # 107. The Ninth Circuit stated that "several" of the Corps' rationales for predicting minimal or insignificant environmental harms from the 2017 version of NWP 48 were "illogical." *Id*.

On September 18, 2020, less than thirty days after the Corps voluntarily dismissed its Ninth Circuit appeal, plaintiff filed an initial motion seeking fees and expenses under the EAJA. Dkt. # 99.

**DISCUSSION**

The Corps does not contest that plaintiff is the prevailing party in this dispute. *See generally* Dkt. # 121. The Corps does not claim any impropriety in the timing or form of plaintiff's motion for EAJA fees and costs. The Corps does not claim plaintiff has failed to meet the EAJA eligibility requirements for receiving fees and expenses. The Corps does not ask this Court to find that "special circumstances" make an award in this case unjust. What the Corps argues in its response is that there should be no award of fees or costs because the Corps' position was "substantially justified" or, in the alternative, that the award should be no more than the $334,258.11 the Corps has calculated as being necessary to reimburse plaintiff for reasonable hourly rates and billable hours. *Id*. at 2.

**A.     The government bears the burden of proving it acted with substantial justification that had a "reasonable basis in both law and fact."**

In their briefs, both plaintiff and the Corps cite *Pierce v. Underwood* for the proposition that "substantially justified" means: "'[J]ustified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." 487 U.S. 552, 565 (1988). Put another way, the government's position must have a "reasonable basis in both law and fact." *Id*. at 565.

The Corps claims this Court may find reasonableness and substantial justification "so long as the government's arguments are not 'feeble' or 'frivolous' and have 'a reasonable basis

in law and fact.'" Dkt. # 121 at 4. But the Corps' pin cite for this proposition reveals no such holding in *Pierce v. Underwood*, and in fact the Court in *Pierce* stated: "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly *not the standard* for Government litigation of which a reasonable person would approve." *Pierce*, 487 U.S. 552 at 565 (italics added). This Court will thus hold the Corps to a higher standard than merely lacking frivolousness.

It is the government's burden to prove that its position was substantially justified. *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). This fact is obscured in the government's response, which cites *Love v. Reilly* as supporting the government's contention that compensation cases under the EAJA place "the burden on the applicant to demonstrate entitlement to such an award." Dkt. # 121 at 2. In context, the government's argument appears to suggest that plaintiff has the burden of proof on substantial justification, but as stated above, that is not the case. The government's pin cite on this issue directs to the following statement in *Love*: "The party seeking fees has the burden of establishing its eligibility." That statement is referencing the basic eligibility requirements under § 2412(d)(2)(B) for parties seeking fees—requirements related to, for example, a party's net worth or corporate form. The relevant rule on the burden of proof for substantial justification comes shortly thereafter, with the Ninth Circuit stating: "The burden of proving the special circumstances or substantial justification exception to the mandatory award of fees under the EAJA rests with the government." *Love*, 942 F.2d at 1495.

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 5

**B.     The Court must look to the record, including the Corp's issuance of NWP 48 and its subsequent litigation position, when determining whether the government was substantially justified.**

The EAJA states: "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based)." 28 U.S.C. § 2412(d)(1)(B). Ninth Circuit precedent defines "the position of the United States" as including "both an agency's action or failure to act" and "the government's litigation position." *Oregon Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1331 (9th Cir. 1992). Here, the Corps' decision to reissue NWP 48 is an "underlying action" by a government agency that must be considered along with the government's litigation position. *Id*. at 1331.

**C.     Neither the reissuance of NWP 48 nor the Corps' litigation position were substantially justified.**

The Corps argues that its position had a reasonable basis in both law and fact "because courts have routinely upheld other Clean Water Act permits in similar circumstances." Dkt. # 121 at 4. The Court will assume the Corps is making this argument in support of both its NWP 48 decisions and its subsequent litigation position, although the Corps failed to specify in its response whether the argument was offered in support of one, the other, or both. *Id*.

As proof of its contention that "courts have routinely upheld Clean Water Act permits in similar circumstances," the Corps cites three appeals court cases. *Id*. Only one of these cases is from the Ninth Circuit. *Id*. While that case, *Snoqualmie Valley Pres. All. v. U.S. Army Corps of Eng'rs*, did involve nationwide permits issued by the Corps, the case turned in relevant part on a

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 6

"verification letter" issued by the Corps in May 2009, confirming that a plan by Puget Sound Energy (PSE) to discharge less than half an acre of fill into the Snoqualmie River as a flood-mitigation measure was allowed under three different nationwide permits. 683 F.3d 1155, 1157-1158, 1161 n.4 (9th Cir. 2012). While this Court does not belittle the potential environmental impact of less than half an acre of fill in a single location, the present case involved concerns about environmental impacts on a far greater scale, potentially affecting 72,300 acres of tidelands throughout the State of Washington. Dkt. # 61 at 14 (citing an assessment by the Corps' Seattle District). More importantly, the present case involved a successful challenge to the process by which the Corps reissued a nationwide permit. In *Snoqualmie Valley Pres. All.*, the issue was not the process that created the relevant nationwide permits, but whether the Corps erred in issuing a verification letter confirming that PSE's project was allowed under existing, unchallenged permits. 683 F.3d 1155 at 1159. The Corps determined the fill project was allowed under those permits, and the Ninth Circuit, in upholding the Corps' interpretation of its own permits, noted that the regulatory scheme for nationwide permits is based, in part, on an assumption that any nationwide permit will undergo "extensive" NEPA analysis "at the time it is promulgated." *Id*. at 1158. This extensive analysis leads to appropriate nationwide policies that allow the Corps to later make quick determinations about individual projects around the country posing "minimal environmental impacts, such as those involving the discharge of less than half an acre of fill." *Id*. at 1163. In the present case, the Court held that the creation of NWP 48 did not involve an extensive enough process to produce an appropriate nationwide

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 7

policy that could serve as the baseline for individual project decisions in the State of Washington. Dkt. # 61. Therefore, *Snoqualmie Valley Pres. All.* does not involve circumstances similar enough to those in the present case to offer a "reasonable basis in both law and fact" for the Corps' position. *Pierce*, 487 U.S. 552 at 565.

The Corps also argues that NWP 48 was consistent with Congress's intent in creating the nationwide permit system. Dkt. # 121 at 5. But this argument is unavailing because Congress also acted with intent in creating NEPA, the CWA, and the APA, and this Court found those acts were insufficiently adhered to in the creation of NWP 48. Dkt. # 61.

While the government's arguments fail to show the government's actions were substantially justified, the Court must examine the record as well. 28 U.S.C. § 2412(d)(1)(B). When this Court concluded NWP 48 was unlawful, it examined whether the Corps' underlying assumptions in issuing NWP 48 had "a substantial basis in fact" when it came to the State of Washington, and whether the Corps' permit decision was "based on relevant evidence that a reasonable mind might accept as adequate to support the agency's conclusion." Dkt. # 61. The Court found "inadequate" analysis, "untenable argument," and, broadly, that the Corps' "prediction that the issuance of NWP 48 would have minimal individual and cumulative impacts on the environment . . . is not based on relevant evidence that a reasonable mind might accept as adequate to support the agency's conclusion." *Id.* In other words, the Corps' decision to issue NWP 48 did not have a reasonable basis in fact. In the context of this case, the decision was unsupported by the facts and unreasonable as a matter of law. Therefore, the record shows that

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 8

the Corps' underlying permitting action does not meet the standard for substantial justification, which requires a "reasonable basis in both law and fact." *Pierce*, 487 U.S. 552 at 565.

The Corps is correct in arguing that a finding of unlawfulness as to NWP 48 does not, *ipso facto*, make the Corps' litigation position unjustified. Dkt. # 121. *See Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988) (stating that "The government's failure to prevail does not raise a presumption that its position was not substantially justified"). In the Ninth Circuit, a court's analysis of the government's litigation position should begin with an "examination of the position on the merits" and then focus "upon 'extraneous circumstances bearing upon the reasonableness of the government's decision to take the case to trial.'" *Oregon Nat. Res. Council*, 980 F.2d 1330 at 1331-1332 (quoting *Kali*, 854 F.2d 329 at 332). As explained above, the position on the merits was not substantially justified because the Corps' prediction of minimal impacts from the reissuance of NWP 48 did not have a reasonable basis in law or fact. Dkt. # 61. Nor does the record in this matter suggest that the government's defense of the Corps' minimal impact determination was substantially justified where the Corps expressly acknowledged that commercial shellfish activities have negative effects on the environment. *Id.* at 10. When looking to extraneous circumstances, "[p]erhaps the most important" extraneous circumstance for a court to consider is "the existence of precedents construing similar statutes or similar facts." *Kali*, 854 F.2d 329 at 332. A past "string of successes" using the government's litigation position could be "indicative" of substantial justification for taking the position advanced in a given case. *Id.* at 332 (quoting *Pierce*, 487 U.S. 552 at 569). As discussed above,

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 9

the government bears the burden of proving substantial justification and has not offered any relevant Ninth Circuit precedents of this sort. As a result, the Court finds that the government's litigation position was not substantially justified.

**D.    The substantial justification exception to EAJA awards does not apply in this case.**

Because both the underlying government action in reissuing NWP 48 and the government's litigation position in defending NWP 48 were not substantially justified, the Court finds that the government has not triggered the substantial justification exception to the EAJA's mandatory award of fees and costs.

**E.    Plaintiff is entitled to an EAJA award in the amount of $710,143.91.**

Given the above findings, the Court "shall" award "reasonable" fees and expenses to the plaintiff. 28 U.S.C. § 2412(d)(1)(A), (d)(2)(A). Plaintiff requests an award of $787,585.41. The government argues the appropriate amount is $334,258.11. Dkt. # 121, 123.

While these are starkly different sums, arrived at through very different appraisals of what is reasonable, both parties repeatedly ground their arguments in the same precedent, *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In that case, the Court discussed how to arrive at appropriate fee awards under the Civil Rights Act and described what is known as the "lodestar method," a straightforward calculation in which "a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. The present case involved a major litigation effort, spanning four years before the Court's Order Vacating NWP 48 in the State of Washington (Dkt. # 89) and concerning highly technical issues

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 10

of environmental and regulatory policy. As the *Henlsey* court stated: "A request for attorney's fees should not result in a second major litigation." 461 U.S. 424 at 437.

The Corps' challenges to plaintiff' proposed award amount are numerous, but they can be gathered into two broad categories: (1) challenges to the hourly rates charged by plaintiff and (2) challenges to the number of hours charged by plaintiff.

**1.     The proposed hourly rates are reasonable given the specialized skill of plaintiff's attorneys and the prevailing rates for such work in the Seattle area.**

Under the EAJA, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In the Ninth Circuit, the statutory maximum rate for reimbursement under the EAJA has been adjusted for cost of living increases over the last decade, rising to $217.54 for 2021, the most recent year in which there were filings in this case. *See* U.S. Courts for the Ninth Cir., Statutory Maximum Rates Under EAJA, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/. In *Pierce*, the Court explained that attorneys may be compensated above the EAJA statutory maximum if they are "qualified for the proceedings in some specialized sense," meaning they have "some distinctive knowledge or specialized skill needful for the litigation in question." 487 U.S. 552 at 572. Attorneys specializing in environmental litigation meet this test. *See Love*, 924 F.2d 1492 at 1496 (declaring that "Environmental litigation is an identifiable practice specialty that requires distinctive knowledge").

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 11

The Court therefore has no trouble finding that plaintiff's attorneys Karl G. Anuta, Thane Tienson, and Mike J. Sargetakis are eligible for compensation above the EAJA statutory maximum given their experience with complex federal environmental litigation and the fact that this case required precisely that specialty. Dkt. # 100, 101, 103. The Court also is confident, based on the declaration of Coalition to Protect Puget Sound Habitat Executive Director Laura Hendricks (Dkt. # 102), that these attorneys' particular skill sets were not "available elsewhere at the statutory rate." *Love*, 924 F.2d 1492 at 1496.

Plaintiff has offered declarations from Seattle environmental attorneys Paul Kampmeier and Thomas Newlon, both of whom attest that the requested rates for plaintiff's attorneys—$640 per hour for Mr. Anuta, $650 per hour for Mr. Tienson, and $300 for Mr. Sargetakis—are in line with prevailing rates in the Seattle area for environmental lawyers with similar skill, experience, and reputation. Dkt. # 119, 120. The Court, having considered the vigorous arguments around these proposed rates, as well as the parties' competing models and analyses bearing on the rate question, finds that plaintiff's proposed rates are reasonable. In making this determination, the Court is satisfied that plaintiff has met its burden to produce evidence showing "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In coming to its conclusion, the Court is also mindful of the Ninth Circuit's admonition in *Moreno v. City of Sacramento* that "[m]odeling law firm economics"—an endeavor that appears to have made its

way into the rate dispute in this case—"drifts far afield of the *Hensley* calculus and the statutory goal of sufficiently compensating counsel in order to attract qualified attorneys" for public interest work. 534 F.3d 1106, 1115 (9th Cir. 2008). *See* also *Hensley*, 461 U.S. 424 at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . and indeed in some cases of exceptional success an enhanced award may be justified.") The Court is likewise mindful of *Moreno*'s instruction to balance the need for a fully compensatory fee against the need to avoid "a windfall" for plaintiff. 534 F.3d at 1111. The Court is satisfied that neither the rates sought by plaintiff's attorneys nor the $145 per hour rate sought for plaintiff's law clerks offends this balancing test.

      The Court further finds it reasonable to calculate the fees in this case at "one constant rate per lawyer," as proposed by plaintiff. Dkt. # 117. *See Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, at *6 (9th Cir. May 12, 2020) ("In general, applying different hourly rates to different aspects of a litigation risks turning the fee award proceedings into a second major litigation, contrary to the Supreme Court's admonition in *Hensley*"). For similar reasons, the Court disagrees with the Corps' contention that plaintiff must be compensated at statutory rates for the hours spent working on their EAJA fee petition because, in the Corps' estimation, "such work does not require specialized or distinctive knowledge within the meaning of EAJA." Dkt. # 121 at 12. In *Greenpeace*, the government made the same argument and the Ninth Circuit found the argument "lacks merit" because adhering to its logic would risk creating a "second major litigation" and make EAJA fee cases "unwieldy and time-consuming." No. 17-35945,

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 13

2020 WL 2465321, at *6 (citing *INS v. Jean*, 496 U.S. 154, 161-62 (1990)). The Ninth Circuit also found the government's argument in *Greenpeace* "contrary to the Supreme Court's instruction that 'the EAJA—like other fee-shifting statutes—favors treating cases an inclusive whole, rather than as atomized line-items.'" *Id.*

Therefore, the hourly rates for the lodestar calculation in this case shall be:

> Karl G. Anuta: $640
>
> Thane Tienson: $650
>
> Mike J. Sargetakis: $300
>
> Law clerks: $145

**2.  The Corps' objections to the number of hours billed and the way they billed them require some adjustments to the claimed fees.**

**a.  Block billing.**

On the question of how many hours should reasonably be charged, the Corps accuses plaintiff of "block billing." Here, again, both parties agree on the precedent, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007), which defines block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time." Although the Corps has filed more than 170 pages of plaintiff's annotated timesheets to demonstrate instances of block billing (Dkt. # 121-1), the Corps has not shown that plaintiff failed to sufficiently itemize their billed time, nor has the Corps shown that plaintiff failed to meet the *Hensley* requirement that billing records "enable a reviewing court to identify distinct claims." 461 U.S. 424 at 437. Many of the block

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 14

billings alleged by the Corps are for significantly less than "the total daily time spent working on the case." *Welch*, 480 F.3d 942 at 945 n.2. Often, the supposedly block-billed entries are for less than a few hours or less than one hour. Dkt. # 121-1. Further, the alleged block-billings overwhelmingly contain detailed descriptions of the work performed, thus allowing this Court to "identify distinct claims." *Hensley*, 461 U.S. 424 at 437. The Corps' own example of alleged block billing by plaintiff makes this point. Dkt. # 121 at 18. The one example of alleged block billing highlighted in the Corps' response is anomalous in that it spans ten days, but the billing is attributed to a law clerk and the description of the clerk's work makes clear, in context, that the clerk was working on plaintiff's NEPA, CWA, and APA claims. *Id*. The full description of how the clerk's time was spent, as cited by the Corps, reads: "Review 2012 & 2017 NWP 48 Decision Documents; Draft and provide Memo comparing both to KGA; Draft and provide Memo on cumulative impact analysis comparisons specifically." *Id*. This description of the clerk's work is considerably more detailed than the descriptions criticized in the Western District of Washington block billing case the Corps cites as precedent. *Id*. *See Sierra Club v. BNSF Ry. Co.*, 276 F. Supp. 3d 1067, 1073 (W.D. Wash. 2017) (finding inappropriate block billing where there were "numerous" billings bearing the vague description "case mngmt," leading the court to order a twenty percent reduction in those vaguely described, block-billed hours). The Court therefore declines to order the twenty percent reduction requested by the Corps for the allegedly block-billed hours.

### b. Prevailing party.

The Corps also seeks a ten percent downward reduction in plaintiff's hours because plaintiff "did not prevail" on its challenge to the 2012 version of NWP 48. Dkt. # 121 at 18. The Corps argues that plaintiff's challenges to the 2012 NWP 48 and the 2017 NWP 48 represent "distinctly different claims for relief that are based on different facts and legal theories." *Id*. Citing *Hensley*, the Corps contends that hours spent by plaintiff on claims related to the 2012 NWP 48 are therefore not compensable given that it was the 2017 NWP 48, and not the 2012 NWP, that this court declared unlawful. *Id*. See 461 U.S. 424 at 434. This analysis is simply incorrect. As discussed above, plaintiff made the same claims in 2012 and 2017 about the Corps' decision to issue NWP 48 (namely, that the Corps' actions violated NEPA, the CWA, and the APA). This Court declared the 2017 version of NWP 48 unlawful in the State of Washington—as opposed to the 2012 version—because, at the time of the Court's ruling in 2019, it was the 2017 version of NWP 48 that was in effect, having superseded the 2012 version. This does not constitute a failure to prevail of the kind the Corps is describing, and plaintiff's original 2012 claims are not distinctly different from the claims plaintiff made in their 2017 supplemental complaint. Further, the Ninth Circuit tests for "whether claims are related or unrelated under *Hensley*" is whether those claims "arose out of the same 'course of conduct.'" *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 903 (9th Cir. 1995). As explained above, in reaching its 2019 decision to declare NWP 48 unlawful, this Court considered both the 2012 and 2017 issuances of NWP 48. Dkt. # 61 at 12-14. That was in part because the Corps'

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 16

process for issuing the 2017 version of NWP 48 failed to properly account for "cumulative impacts" on the environment that have roots in the Corps' process for issuing the 2012 version of NWP 48. *Id*. In other words, the 2012 and 2017 issuances of NWP 48 are part of the same course of conduct. Therefore, the Court declines to order a 10 percent reduction in hours billed by plaintiff before the 2017 NWP 48 was issued. For the same reasons, the Court disagrees with the Corps' contention that plaintiff's billed hours "reaching as far back as 2013" are unreasonable. Dkt. # 121 at 19. That plaintiff's billed hours would reach back to 2013 is, in light of the long course of conduct involved in this case, quite reasonable.

        **c.**        **Hours spent responding to intervenors.**

Pointing to Ninth Circuit precedent, the Corps argues that hours spent by plaintiff responding to motions filed by intervenors are not compensable under the EAJA. Dkt. # 121 at 13 (citing *Love*, 924 F.2d 1492 at 1495-96). Plaintiff does not offer any contrary Ninth Circuit precedent. Dkt. # 123 at 10. In *Love*, the Ninth Circuit held that awarding fees under the EAJA for time spent opposing private intervenors would be "unjust," where "the government did not join the intervenors' motion" and the accrued fees could not be shown to have arisen from "opposing government resistance." 924 F.2d 1492 at 1496. Although plaintiff argues that "at virtually every phase of the litigation, the shellfish industry was in lock-step with the Corps' positions and vice-versa," that does not mean—much less begin to prove—that in responding to these private sector intervenors, plaintiff were in fact opposing government resistance. Furthermore, the government did not join the intervenor motions that are cited in the Corps'

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 17

response as generating $76,076.50 in legal bills claimed by plaintiff. Dkt. # 121 at 14-15. The Court therefore grants the Corps' request to reduce plaintiff's award by $76,076.50.

### d. Clerical or secretarial tasks.

Though it is a close call, the Court is ultimately unpersuaded by the Corps' contention that 136.25 hours claimed by plaintiff must be denied because they involved "purely clerical or secretarial tasks." Dkt. 121 at 15 (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). Plaintiff makes a compelling argument that in the context of this complex, specialized litigation involving a record with "hundreds of thousands of pages, on seven DVDs chock full of documents in two overlapping sets of Bates numbers," even tasks like creating an index "so that it is functionally accessible to a litigator" or drafting a table of authorities that is compliant with local court rules will necessarily involve a level of legal judgment that makes those endeavors more than "purely clerical." Dkt. 123 at 10. The Corps, for its part, points to *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009), which deemed tasks ranging from "track package" to "assemble and organize documents" to be clerical work, but did not offer any specific guidance as to when the job of assembling and organizing documents (or creating "tables of contents and authorities") becomes so complex a task that it ceases to be clerical work. Dkt. # 121 at 15. Lacking binding precedent on precisely when certain tasks involve such complexity and necessitate such a degree of legal judgment that they cease being "purely clerical or secretarial tasks," this Court finds that the challenged hours, as described by the Corps in its response and illuminated by plaintiff in its reply, were not for "purely clerical or secretarial" work.

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 18

    **e.**  **Incorrectly submitted hours.**

The parties agree that 2.1 hours submitted by plaintiff should not be compensated because they relate to a different matter and, according to plaintiff, were submitted by mistake. Dkt. # 121 at 16, 123 at 9. The Court will therefore reduce the award by the amount of the requested fee for those 2.1 hours, which was $1,365.

    **f.**  **The Court lacks sufficient information on the FOIA fee waiver issue.**

The Corps suggests that plaintiff are trying to "have it both ways" because plaintiff asked the Corps for a fee waiver for certain FOIA requests during litigation *and* plaintiff has now submitted bills for the attorney hours spent working on the FOIA fee waiver issue. Dkt. # 121 at 16. However, the record does not make clear whether plaintiff's request for a FOIA fee waiver was ever granted by the Corps. Dkt. # 121, 123. Furthermore, the billing descriptions of the contested time spent on this matter suggest plaintiff's attorneys very well could have been unsuccessful in getting a FOIA fee waiver, and thus could not be having it "both ways" at taxpayer expense on this issue. Dkt. # 121, 121-1. Lacking sufficient information from the parties, the Court declines to reduce the fee award based on the FOIA fee waiver issue.

    **g.**  **Discussions with co-counsel at the Center for Food Safety.**

The Corps claims that 3.6 hours billed by plaintiff for discussing a "Briefing page limit issue" with co-counsel are not allowable because they are unreasonable. Dkt. # 121 at 17. Plaintiff persuasively counters that the Ninth Circuit has approved of EAJA awards that include billing for discussions with co-counsel. Dkt. # 123 at 11. *See Nadarajah*, 569 F.3d 906 at 919. Therefore, the Court declines to remove those hours from the fee award.

ORDER GRANTING ATTORNEY FEES AND
EXPENSES - 19

      **h.**    **After considering the challenges to hours billed, plaintiff are entitled to an EAJA award of $710,143.91.**

Plaintiff requested an EAJA award of $787,585.41. This Court has already found the hourly rates submitted by plaintiff for their lodestar calculation to be appropriate. Deducting for the non-compensable hours plaintiff spent responding to intervenors in this case ($76,076.50) and for the small number of hours plaintiff admitted were erroneously submitted ($1,365), the Court arrives at an award amount of $710,143.91.

For all the foregoing reasons, plaintiff's motions for attorney fees and expenses under the Equal Access to Justice Act (Dkt. # 99, 117, 123) are GRANTED in the amount of $710,143.91.

Dated this 6th day of September, 2022.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge